Macomber, J.
This action was brought to procure an accounting of the defendant concerning certain property turned oyer to him by the plaintiffs. The defendant is the assignee of the firm of Herron and Spencer. The assets of that concern consisted largely of imported goods which were stored in bonded warehouses, the receipts of which had been pledged to secure the notes of the firm to-various banks of the city of New York. There were, among these notes, eighteen, amounting to $96,600, reach of which was accompanied by the written guaranty of the plaintiffs in this action for its payment upon the transfer to them of the note and all right and title of the holders to the collateral securities. These notes were paid by the plaintiffs and the title to the collaterals was transferred to them principally, though not wholly, after the appointment of the defendant as assignee of the firm of Herron and Spencer. All the goods that were pledged by Herron and Spencer, including those to the plaintiffs, were subject to the lien of the Government thereon for duties. The original assignee of Herron and Spencer failed to . qualify, and the selection of this defendant in his place seems to *35 have been the result, in part, at least, of an arrangement between the plaintiffs and him. One of the plaintiffs stated to the defendant that there was some difficulty about the original assignee’s giving security, whereupon the. defendant suggested that if the plaintiff’s firm would procure his appointment as assignee and put their goods in Ms hands, he would help them with money to take up the notes, and as he already had the matters of the Importers’ and Traders’ Bank in his hands, he had no doubt the Park Bank would also do the same thing, and thus the control of the goods would be concentrated in one person, and any serious sacrifice thereof would consequently be prevented. The defendant seems to have been appointed assignee under and in pursuance of such conversation and arrangement. The goods, both of the plaintiffs and of other creditors, were placed in the defendant’s hands, the most of which had been sold before this action was brought. Before, however, the defendant could take any active steps in converting any of the property into money, he was obliged to and did pay the duties to the government upon the goods that were in the bonded warehouses.
At the time of the arrangement spoken of above between the plaintiffs and the defendant, nothing was said directly as to who should bear the sum payable to the government for the duties. The result of the conversation was that the defendant should take these goods, with others, and account to the plaintiffs therefor. It was several months later, and not until the tlfird day of January, 1885, when the question was brought up whether the defendant, as the general assignee of Herron and Spencer, should bear the expense of the duties upon the goods wMeh had been pledged to the plaintiffs, or whether such duties should be deducted from the amount realized upon the sale of the goods by the defendant, made under the arrangement already stated. The defendant refused to recognize the claim, then for the first time distinctly made by the plaintiffs, whereupon it was arranged that the defendant should continue the sale of the goods without prejudice to the rights of the parties respectively.
The learned referee has charged against the defendant, and not against the goods of the plaintiffs, all duties winch the defendant had paid to the government prior to the third day of January, 1885, and has refused to charge him for any duties wlfieh he has paid subsequently thereto. He thus holds that the goods of the plaintiffs should not be answerable for the duties imposed upon them until after a time when the subject-matter was distinctly raised and disputed between the parties. The judgment seems to rest in part upon sections 3466 and 3467 of the Revised Statutes of the United States, wMch give a preference to the government for all duties imposed upon goods which are owned *36 by all persons who subsequently make an assignment of the property, or whose property afterwards comes into the hands of their personal representatives. Nevertheless, the judgment does not seem to be founded wholly upon these provisions of the statute, or upon the ground that in this case it was the duty of the assignee to relieve the goods that were in the bonded warehouses from the government’s lien for duties in favor of the plaintiffs, because if that had been the decision, every consideration of logic would have led the referee to hold that the duties paid subsequently to the third day of January, 1885, as well as those paid before that date, should thus be a burthen upon the general funds of the assignee rather than be distributed or apportioned upon the different quantities and parcels thereof.
The referee has also found and also decides that the payment before the date mentioned, was a voluntary payment of the same, and that, therefore, he cannot now charge it over to the plaintiffs upon this accounting. And this brings up the principal, if not really the only serious question that exists in /the case. It stands as a conceded fact that though these goods came into the hands of the defendant as assignee of Herron and Spencer, yet they came charged with the previous rights of the plaintiffs in this action, and whatever interest the defendant, as such assignee, had in these goods so pledged to the plaintiffs, was subordinate to the title of the plaintiffs. What particular thing then did the parties contemplate at the time of the conversation between Mr. Dean and the defendant, preceding the taking by the defendant of these goods ? It must have been well understood that each knew the well-defined rights of the plaintiffs: that the defendant had no right to take the goods so pledged to the plaintiffs and sell them and distribute the proceeds thereof generally for the benefit of all the creditors. It was well enough understood that the value of the property so pledged to the plaintiffs was insufficient wholly to pay the amount of the $96,600 of the indebtedness represented by' the notes, after paying the duties which were due to the government. While, therefore, it may be true, that no words were spoken in regard to the advancing by the defendant of a sum sufficient to pay the duties to the government, yet, if the situation presented was such as impliedly would make it the duty of the defendant, undertaking to deal with these goods in this manner, so to advance the moneys to the government, the obligation to do so would be as binding upon him as though the required payment had been explicitly undertaken. The statement of the preliminary arrangement, which is borne out by all of the evidence in the case, is that the defendant was to take the' goods and sell them, and from what was realized therefrom was to pay the notes for which the plaintiffs were obligated, or so much thereof as such proceeds would enable them to do. We cannot read the testimony in the light *37 that it was assumed, by either of the parties to the conversation, that the defendant, either individually or as the representative of all creditors of Herron and Spencer, was to mate a gratuity of twenty odd thousand dollars to the plaintiffs, for such would be the result of the findings of the referee. It is difficult to see what equity the plaintiffs would have in requiring the general funds of the insolvent firm to pay the duties upon this portion of the property under the circumstances, unless the plaintiffs turned over that property, freed from their own proprietary rights, for distribution among the creditors at large. When the defendant undertook to take the property, sell it and answer for the proceeds, he undertook to do only what was required to be done, namely, to convert the property into cash, after paying all necessary expenses thereof, and one of the largest items of expense would necessarily be the payment of the preferred debt to the government, without which he could not take any step whatever to possess himself of the subject matter of the contract, and without which he could not realize anything for the benefit of the plaintiffs. He appears to have been no more a volunteer than any agent would be who had undertaken to obtain certain property for his principal, dispose of it and account to his principal for the proceeds. There is no room, under the facts of this case, for the application against the defendant of the principle invoked by the learned referee, of voluntary payment. The circumstance that the defendant paid the amount of the duties out of the funds in his hands as assignee, and not out of his individual funds, is unimportant, because, under the terms of the contract itself, he was to convert the property pledged to the plaintiffs mto money, and to account to them therefor.
Under the facts appearing in the case, we think that the plaintiffs have not the right to compel the defendant to account to them for the $21,437.23, the amount of the duties for the government which the defendant has advanced, but that, on the contrary, the defendant had the right to deduct that sum from the proceeds of the 'property so pledged to the plaintiffs.
The judgment should be reversed and a new trial granted with costs to abide the event.
Daniels and Brady, JJ., concur.